UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

MICHAEL DROGOSZ,

    Plaintiff,

v.                                                       CAUSE NO. 3:22-CV-387-DRL-MGG

MARK NEWKIRK *et al.*,

    Defendants.

OPINION AND ORDER

Michael Drogosz, a prisoner without a lawyer, filed a document titled, "Motion to Alter or Amend Judgment." ECF 10. The motion asserts it is filed pursuant to Federal Rule of Civil Procedure 59(e), but Rule 59(e) motions "must be filed no later than 28 days after the entry of judgment." Fed. R. Civ. P. 59(e). The court is not permitted to enlarge this deadline. Fed. R. Civ. P. 6(b)(2). Judgment was entered May 17, 2022. ECF 6. The motion was signed thirty-five days later on June 21, 2022. ECF 10 at 15. "When a motion is filed more than 28 days after the entry of judgment, whether the movant calls it a Rule 59(e) motion or a Rule 60(b) motion, we treat it as a Rule 60(b) motion." *Banks v. Chicago Bd. of Educ.*, 750 F.3d 663, 666 (7th Cir. 2014). "Relief under Rule 60(b) is an extraordinary remedy reserved for extraordinary circumstances." *Word Seed Church v. Vill. of Homewood*, 43 F.4th 688, 690 (7th Cir. 2022).

In his complaint, Mr. Drogosz raised three claims against Grievance Processer Mark Newkirk and the Indiana Department of Correction. ECF 1. He argues the court made factual and legal errors when it dismissed this case. ECF 10. In Section A of the

motion, he argues the court mistakenly characterized his grievances as being about the cost of medical co-pays. *Id.* at ¶ 1. That description was an accurate summary—it was not a factual error. "The complaint stated, "This grievance took issue with an IDOC policy concerning medical co-payment and prescription drug fees." ECF 1 at ¶ 6. Both the complaint and the Rule 60(b) motion provide greater details about the nature of his concerns about the medical co-pays, but these details were not necessary to the court's determination that claims one and two did not state a claim because "[p]rison grievance procedures are not mandated by the First Amendment and do not by their very existence create interests protected by the Due Process Clause, and so the alleged mishandling of [a prisoner's] grievances by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). The complaint did not allege, and the Rule 60(b) motion does not assert, that Grievance Processor Newkirk was involved with assessing or collecting the medical co-pays. The details about why Mr. Drogosz thought the medical co-pays were improperly deducted from his account were not relevant to these claims.

      In Section B of the motion, Mr. Drogosz argues the court made a legal error when it found the mishandling of his grievances did not state a claim. ECF 10 at ¶ 6. He asserts both the due process clause and Indiana law "create a claim of entitlement" to the grievance process to challenge medical co-pays. ECF 10 at ¶ 11. His due process argument

is foreclosed by *Owens*. His argument about Indiana law is that 210 I.A.C. 7-2-7[1] entitles him to use the grievance process to challenge medical co-pays and is thus a "State created liberty interest." ECF 10 at ¶ 11. The Supreme Court has "recognize[d] that States may under certain circumstances create liberty interests which are protected by the Due Process Clause." *Sandin v. Conner*, 515 U.S. 472, 483–84 (1995). However, "*Sandin* refocused the inquiry on the 'nature' of the deprivation at issue. The Court held that a state could not create a liberty interest unless the right provided freedom from restraint that 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Thielman v. Leean*, 282 F.3d 478, 482 (7th Cir. 2002) (citation omitted). Filing grievances about medical co-pays has nothing to do with freedom from restraint, and Mr. Drogosz has no state created liberty interest in using the grievance process to challenge them.

In Section C of the motion, Mr. Drogosz argues the court made a factual error when it stated claim two alleged, "Grievance Processor Mark Newkirk continued to refuse to process his grievances after Mr. Drogosz told him refusing to do so was a constitutional violation." ECF 10 at ¶ 12. The court's paraphrase of this claim did not misrepresent how Mr. Drogosz' presented claim two in his complaint:

> The Plaintiff notified Defendant Newkirk that his refusal to perform his job intentionally, to prevent the Plaintiff from administrative exhaustion was a violation of the Plaintiff's rights. The Defendant refused to cease the

---

[1] 210 I.A.C. 7-2-7 provides that "An offender may challenge any order for health care services co-payment or any action relevant to payment for health care services in accordance with the procedures for Policy 00-02-301, 'The Offender Grievance Process'."

3

> violation and in doing so was deliberately indifferent to the Plaintiff's Constitutional Rights.

ECF 1 at ¶ 37. Mr. Drogosz now argues "Claim Two was about a requirement to act and a deliberate disregard to the Plaintiff's constitutional rights." ECF 10 at ¶ 12. He asserts Grievance Processor Newkirk failed to intervene in connection with his medical co-pays. *Id.* at ¶ 15. Claim two did not present a failure to intervene claim, but even if it had, it would not have stated a claim. Grievance Processor Newkirk had no opportunity to prevent events which happened before the grievance was filed. *See Miller v. Smith*, 220 F.3d 491, 495 (7th Cir. 2000) ("officers who have a realistic opportunity to step forward and prevent a fellow officer from violating a plaintiff's right . . . but fail to do so" may be held liable).

Mr. Drogosz asserts "the violations were ongoing." ECF 10 at ¶ 15. However, even an ongoing denial of medical treatment is not a basis for finding a grievance examiner liable. In *Burks v. Raemisch*, 555 F.3d 596 (7th Cir. 2009), the court of appeals affirmed the dismissal of a claim against a grievance examiner explaining "[t]he most one can say is [the grievance examiner] did nothing, when she might have gone beyond the requirements of her job and tried to help him. A layperson's failure to tell the medical staff how to do its job cannot be called deliberate indifference; it is just a form of failing to supply a gratuitous rescue service." *Id.* at 596. The "contention that any public employee who knows (or should know) about a wrong must do something to fix it is just an effort to evade, by indirection, *Monell* [*v. New York City Dep't of Social Services*, 436 U.S. 658]'s rule that public employees are responsible for their own misdeeds but not for

4

anyone else's." *Id*. "[P]rison officials who reject prisoners' grievances do not become liable just because they fail to ensure adequate remedies." *Est. of Miller by Chassie v. Marberry*, 847 F.3d 425, 428 (7th Cir. 2017). "Public officials do not have a free-floating obligation to put things to rights[.]" *Burks*, 555 F.3d at 595.

In Section D of the motion, Mr. Drogosz argues the court made a factual error when it stated claim one alleged, "Grievance Processor Mark Newkirk refused to properly process his grievances. ECF 10 at ¶ 19. The court's paraphrase did not misrepresent how Mr. Drogosz' presented claim one in his complaint:

> An officer of the Indiana Department of Correction has a duty to perform their assignment. The Defendant Newkirk refused to do his job, to prevent the Plaintiff from administrative exhaustion, an abuse of this Defendant's Government powers of which the Plaintiff has a right to be free of said abuse. Defendant Newkirk perverted the natural flow of the grievance process to protect his employer thus violating the Plaintiff's right to be free of oppression and the abuse of governmental power.

ECF 1 at ¶ 36. He argues he "has a First Amendment right to make grievances." ECF 10 at ¶ 20 (emphasis omitted). However, the First Amendment does not guarantee he receive an answer. *See We the People Found., Inc. v. United States*, 485 F.3d 140, 143 (D.C. Cir. 2007) ("Plaintiffs contend that they have a right under the First Amendment to receive a government response to or official consideration of a petition for a redress of grievances. We disagree.").

In Section E of the motion, Mr. Drogosz argues he was denied access to the courts "because the Plaintiff was prevented from fulfilling the requirement to administratively exhaust before filing suit . . .." ECF 10 at ¶ 28 (citation omitted). A denial of access to the courts claim was not one of the three claims presented in the complaint. The court did

5

not err by not addressing a claim not raised. If this claim had been raised, it would have been dismissed because preventing him from exhausting did not keep him from filing a lawsuit based on the unexhausted claims. Prisoners are only prohibited from bringing an action in federal court with respect to prison conditions "until such administrative remedies <u>as are available</u> are exhausted." 42 U.S.C. § 1997e(a) (emphasis added). "Prison officials may not take unfair advantage of the exhaustion requirement . . . and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

In Section F of the motion, Mr. Drogosz argues the court made a factual error when it stated claim three alleged "Grievance Processor Mark Newkirk issued a conduct report charging him with threatening in retaliation for his threatening to sue for not processing his grievances." ECF 10 at ¶ 31. He asserts, "[t]here was <u>No</u> mention in the original complaint under claim three of, 'threatening to sue' or 'processing grievances.'" *Id*. Mr. Drogosz is correct he did not use those words in the paragraph for claim three where he wrote:

> The Plaintiff makes a claim of First Amendment Retaliation against Defendant Newkirk for issuing a major conduct report against the Plaintiff for engaging in protected speech. And for the campaign of retaliation by this Defendant's subordinates.

ECF 1 at ¶ 38. However, the court's description of this claim was not inaccurate. In an earlier paragraph of the complaint, Mr. Drogosz wrote that Grievance Processor Newkirk was "obstructing the natural flow of the grievance process[.]" *Id*. ¶ 28. He then explained

6

how he addressed this obstruction of the grievance process: "The Plaintiff stated to Defendant Newkirk: 'So would you like to be Grievance Processor Newkirk – or – Defendant Newkirk?' This was a threat to sue[.]" *Id.* ¶ 29 (citation omitted, emphasis added).

In Section G of the motion, Mr. Drogosz argues the court "[m]isapplied the law used to support section F's erroneous fact." ECF 10 at § G (emphasis omitted). He argues "No where in the original complaint is it alleged the Plaintiff, 'threatened … to file a grievance.'" *Id.* at ¶ 32 (emphasis and ellipsis in original). The dismissal order did not find he threatened to file a grievance—it found he threatened to sue. As previously discussed, that was not an error. *See id.* ¶ 29 ("This was a threat to sue . . ..").

In Section H of the motion, Mr. Drogosz cites to thirteen cases to support his argument that a threat to sue is protected by the First Amendment. ECF 10 ¶ 35. Neither of the two Supreme Court cases he cites support that proposition. In *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.*, 565 U.S. 171 (2012), the court found "[t]he ADA prohibits an employer from discriminating against a qualified individual on the basis of disability [and] prohibits an employer from retaliating" for asserting an ADA claim. *Id.* at 179. It did not discuss First Amendment retaliation; the references to the First Amendment were limited to the religion clauses.

In *United Credit Bureau of Am. Inc. v. N.L.R.B.*, 454 U.S. 994 (1981), Justice Rehnquist dissented from the denial of a petition for a *writ of certiorari* in a case where the National Labor Relations Board ordered an employer to dismiss a state court lawsuit against a former employee who had filed unfair labor practices charges. The case makes no

7

mention of the First Amendment. The dissent is based on "principles of federalism and comity." *Id.*

The one published Seventh Circuit case Mr. Drogosz cites fares no better. In *Dobbey v. Illinois Dep't of Corr.*, 574 F.3d 443 (7th Cir. 2009), the court held that *filing* a grievance was protected by the First Amendment. It made no mention of *threatening* to file one.

Mr. Drogosz cites ten other cases, but none are binding authority. The court will examine the two nonprecedential Seventh Circuit orders because they can be persuasive though they are not "the law of the circuit." Seventh Circuit Rule 32.1(b). The court will not discuss the eight district court opinions in light of the persuasive weight of the Seventh Circuit opinions and orders examined here.[2]

In *Antoine v. Ramos*, 497 F. Appx. 631 (7th Cir. 2012), Mr. Antoine was proceeding against several defendants for allegedly "violating the First Amendment by retaliating against Antoine for <u>filing</u> grievances." *Id.* at 632 (emphasis added). The protected speech addressed by the holding in *Antoine* is not about threatening to sue; it is about filing grievances. There were "two acts of suspected retaliation . . . a shakedown of Antoine's cell . . . and a disciplinary ticket that Robertson supposedly fabricated." *Id.* at 633. The district court granted summary judgment on all claims. On appeal, the court of appeals affirmed the retaliation claim based the shakedown, but found there was a genuine issue

---

[2] "A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) (quoting Moore's Federal Practice § 134.02[1] [d]). Though district court rulings can be persuasive authorities, in light of the Seventh Circuit cases discussed in this opinion, the court declines to address them here.

of fact as to the allegedly fabricated disciplinary ticket. "Robertson . . . accus[ed] Antoine of engaging in 'intimidation and threats' by threatening to sue him." *Id*.

> Whether or not Antoine made the threat is a disputed fact for a jury to decide. Antoine testified by affidavit and at his deposition that he never threatened Robertson. Antoine's account directly contradicts Robertson's affidavit stating that he issued the disciplinary ticket because Antoine had threatened to sue him.

*Id.* at 634 (citation omitted). The court of appeals "conclude[d] that a jury reasonably could find that Robertson fabricated a disciplinary report to retaliate against Mr. Antoine for <u>filing</u> grievances . . . .." *Id.* at 632 (emphasis added). Such a finding would have been based on believing Mr. Antoine did not threaten to sue Officer Robertson. In the absence of a threat to sue, the jury could have believed the fabricated disciplinary ticket was motivated by retaliatory animus caused by Mr. Antoine's First Amendment protected right to file a grievance.

Though the holding in *Antoine* is not about a threat to sue, the reasoning of the opinion suggests inmate threats to sue are not protected by the First Amendment. "To establish a prima facie case of unlawful retaliation, a plaintiff must show (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020) (internal quotation marks and citation omitted). If the court in *Antoine*, believed inmate threats to sue were protected speech, the guard's own testimony would have satisfied the first and third prongs—leaving only the second to prove liability. Because *Antoine* gives no consideration to that possibility, it

9

appears to say if Mr. Antoine did not threaten to sue the guard, a jury could find in his favor; but if he did threaten to sue the guard, he loses.

In *Ashley v. Seamon*, 32 F. Appx. 747 (7th Cir. 2002), the complaint raised several claims including alleging "Captain Seamon retaliated against him for allegedly threatening to sue her." *Id*. at 748. The district court dismissed the case pursuant to 28 U.S.C. § 1915A, but "did not address Ashley's First Amendment retaliation claim." *Id*. at 749. In granting leave to appeal *in forma pauperis*, the district court "conceded that its § 1915A dismissal "did not pass on those particular claims." *Id*. On appeal, the court of appeals found Ashley "stated a First Amendment retaliation claim by alleging that he was detained in segregation for allegedly threatening to sue Captain Seamon." *Id*. at 749. This nonprecedential order supports Mr. Drogosz argument, but it was issued without the benefit of a lower court opinion and it did not examine the difference between filing a lawsuit and threatening to do so. It is not as persuasive as *Antoine* and the five other subsequently issued Seventh Circuit cases discussed later in this opinion.

In *Bridges v. Gilbert*, 557 F.3d 541 (7th Cir. 2009), the court of appeals issued a lengthy and detailed opinion analyzing the First Amendment free speech rights of inmates in a case where the district court dismissed several retaliation claims pursuant to 28 U.S.C. § 1915A. Though reversing and remanding one claim, it affirmed dismissal of the "retaliation for threatening to file a grievance" claim and others. *Id*. at 556. Mr. Bridges alleged he "threatened the Defendant that he was going to file a grievance against her . . . ." *Id.* at 545. The court of appeals explained:

> [I]t seems implausible that a *threat* to file a grievance would itself constitute a First Amendment-protected grievance. Even if the threat were deemed protected activity, Bridges's allegations do not lead to an inference that the retaliation would deter a person of ordinary firmness from exercising First Amendment activity in the future. Bridges alleges that the Defendant filed an unjustified disciplinary charge, which . . . was later dismissed. A single retaliatory disciplinary charge that is later dismissed is insufficient to serve as the basis of a § 1983 action. This claim was properly dismissed.

*Id.* at 555 (emphasis in original, citations omitted). Though *Bridges* left open the question of whether a threat to file a grievance was protected by the First Amendment, it strongly questioned the possibility.

In *Watkins v. Kasper*, 599 F.3d 791 (7th Cir. 2010), the court of appeals held that "[a] prisoner has a First Amendment right to make grievances about conditions of confinement, [but] the prisoner must exercise that right in a *manner* consistent with his status as a prisoner." *Id*. at 798 (quotations omitted, emphasis original). This retaliation claim did not specifically address an inmate's threat to sue, but it made clear an inmate's speech would only be protected by the First Amendment if it was consistent with legitimate penological interests. *Id*. at 799. The court found that "Watkins did not confine

11

himself to a formal, written grievance or a courteous, oral conversation" about his concerns. *Id*. at 798. The court took the extraordinary step of setting aside the jury verdict and remanding with instructions to enter judgment for the defendant.

In *Kervin v. Barnes*, 787 F.3d 833, 835 (7th Cir. 2015), the court of appeals explained that "backtalk by prison inmates to guards, like other speech that violates prison discipline, is not constitutionally protected." *Ustrak v. Fairman*, 781 F.2d 573, 580 (7th Cir.1986) ("We can imagine few things more inimical to prison discipline than allowing prisoners to abuse guards and each other. The level of violence in American prisons makes it imperative that the authorities take effective steps to prevent provocation"); *see also Watkins v. Kasper*, 599 F.3d 791, 799 (7th Cir.2010); *Bridges v. Gilbert*, 557 F.3d 541, 551 (7th Cir.2009); *Gee v. Pacheco*, 627 F.3d 1178, 1187–88, 1191 (10th Cir.2010). *Kervin* was not a retaliation case, but it explains the First Amendment does not protect inmate speech which disrupts good order within the prison. Similar to backtalk, threats to file a grievance or lawsuit are argumentative and do not advance the substance of the matter about which the inmate is complaining.

In *Cobian v. McLaughlin*, 717 Fed. Appx. 605 (7th Cir. 2017), "Cobian argue[d] that he engaged in protected speech when he told McLaughlin that if he didn't take protective measures, Cobian would be obligated to get a court ordered injunction ordering him to take the necessary measures, after which McLaughlin wrote Cobian a disciplinary report for threatening him and Cobian was sentenced to segregation." *Id*. at 612 (brackets and quotations omitted). Citing *Bridges* and *Kervin*, the court of appeals held that "[t]he statements that Cobian cites as the basis for his retaliation claim were not protected by

12

the First Amendment." *Id*. Mr. Drogosz argues this case is not relevant because "that inmate wanted the prison staff to 'research my enemies.' [which] asked the prison staff to do something illegal[.]" ECF 10 ¶ 33 (citation omitted). Mr. Drogosz is correct the request asked prison staff to research his enemies, but there is no indication this request was either illegal or even improper.

> [Mr. Cobian] alleged that sometime in 2011 he told Steele that he feared violent retaliation from three gang members against whom he had testified at a criminal trial and who were housed somewhere within the Illinois Department of Corrections but Steele did nothing. In June 2012 he asked McLaughlin to help him obtain records showing that he had testified against the three gang members so that prison officials would not place him anywhere within the Department of Corrections where he could be seen by them.

*Cobian*, 717 F. Appx. at 607.

In *Clark v. Reed*, 772 F. Appx. 353 (7th Cir. 2019), "Clark assert[ed] that Reed violated the First Amendment right by disciplining him in retaliation for threatening to file a grievance." *Id*. at 354. "Clark assert[ed] that, because oral grievances are protected, his oral *threat* to file a grievance was protected, too." *Id*. at 355 (emphasis original). The district court "ruled that Reed was entitled to qualified immunity on Clark's retaliation claim because it was not clearly established that a threat to file a grievance was protected speech." *Id*. at 354. The court of appeals agreed. *Id*. at 355. Mr. Drogosz argues this case is not relevant because "the *Clark* court clearly states the *Bridges* case does not clearly establish if a threat to file a grievance is protected speech." ECF 10 at ¶ 34. Though true, *Clark* indicates it is likely not when it quotes *Bridges* saying, "it seems implausible that a

13

*threat* to file a grievance would itself constitute a First Amendment-protected grievance." *Clark*, 772 F. Appx. at 355 (emphasis in original).

In 2002, *Ashley* held an inmate's threat to sue was protected by the First Amendment. But *Ashley* is a nonprecedential order that did not settle the question. Its lack of analysis makes it unpersuasive in light of six subsequent Seventh Circuit cases which point to the opposite conclusion. In 2009, *Bridges*, a published opinion, squarely addressed the question. Though deciding the case on other grounds, it said it was implausible that inmate threats to sue were protected speech. In 2010, *Watkins*, a published opinion, held prisoner grievances were not protected speech unless they were made in a manner consistent with legitimate penological interests. In 2012, *Antoine*, a nonprecedential order, implied inmate threats to sue are not protected by the First Amendment. In 2015, *Kervin*, a published opinion, held that backtalk was not protected speech. In 2017, *Cobain*, a nonprecedential order, squarely addressed the question and held inmate threats to sue were not protected by the First Amendment. In 2019, *Clark*, a nonprecedential order, squarely addressed the question. Though it was decided on the basis of qualified immunity, it indicated inmate threats to sue were likely not protected speech.

The question of whether inmate threats to sue are protected by the First Amendment has not been definitively resolved in the Seventh Circuit. Of the four cases that have squarely addressed the question one old nonprecidential order says they are, and one new nonprecedential order says they are not. One published opinion and one nonprecedential order were decided on other grounds, but strongly suggested they are

14

not. Three other cases do not squarely address the question, but provide support for holding they are not. Based on the persuasive weight of six Seventh Circuit cases issued in the twenty years since *Ashley*, this court did not err when it held Mr. Drogosz threat to sue was not protected by the First Amendment.

In Section I of the motion, Mr. Drogosz argues this court erred by not applying the matter of public concern test. ECF 10 at § I. As he notes later in the motion, the court of appeals has held "that a prisoner's speech can be protected even when it does not involve a matter of public concern." *Bridges*, 557 F.3d at 551 (7th Cir. 2009). ECF 10 ¶ 42. It was not error for this court to have not applied this test.

In Section J of the motion, Mr. Drogosz argues "[t]his Court failed to apply the *Turner* test as required by *Bridges*." ECF 10 at ¶ 43. It is true the dismissal order did not cite to *Turner*, but it did cite to *Bridges* and *Watkins*; both of which applied *Turner* to a First Amendment retaliation claim. The court also cited to *Clark* and *Cobain*, both of which squarely addressed the question of whether an inmate's threat to sue was protected speech. Though the court could have cited to other cases and examined the issue in greater depth in the dismissal order, it was not error to have not done so. As more thoroughly explained in this order, the result would not have been different.

Mr. Drogosz also argues his "speech was clearly protected as it was written, formal, identified a matter of public concern, and was within the internal grievance process." ECF 10 ¶ 46. He omits that he threatened to sue. ECF 1 ¶ 29. That threat was not a polite discussion of his concerns about medical co-pays. It was "backtalk." Threatening to sue is not an effort to explain a valid concern. "[B]acktalk by prison

inmates to guards . . . violates prison discipline [and] is not constitutionally protected." *Kervin*, 787 F.3d at 835. Attempting to intimidate a guard into acting out of personal distress is not protected by the First Amendment.

In Section K of the motion, Mr. Drogosz accuses the court of judicial bias. "Some of the Court's actions contained herein will be reported to the Judicial Council of the Seventh Circuit and the Court may construe that as a threat to take legal action." ECF 10 ¶ 50. This statement does not demonstrate that the court made either a factual or legal error when it dismissed this case. Mr. Drogosz raises numerous other arguments in his fifteen-page, fifty-paragraph motion. All are variations of the primary arguments addressed in this order. None have merit.

For these reasons, the Rule 60(b) motion is DENIED.

SO ORDERED.

February 23, 2023                           *s/ Damon R. Leichty*
                                            Judge, United States District Court